JaLeBLANC, J.
This is an appeal of a summary judgment granted in favor of the defendants, America’s Favorite Chicken Company, Osaya, Inc., and Andrew Osaya, finding them not liable for the wrongful death of Mr. Jason Wilbert Oberling, who was murdered on November 15,1994, on the premises of a Church’s Fried Chicken restaurant on Government Street in Baton Rouge, which was owned and operated by Osaya, Inc. After a thorough review of the record, we find the trial court did not err in concluding there were no remaining issues of material fact regarding the liability of the defendants; and as a matter of law, the defendants were entitled to judgment. Accordingly, the judgment dismissing plaintiffs action against them is affirmed.
Procedural History
Initially, we issued a rule to show cause why this appeal should not be dismissed as a non-appealable partial judgment pursuant to La.C.C.P. art. 1915 and the amendments thereto effective July 1, 1997. Since that time, the parties have submitted to this court a joint stipulation evidencing their express agreement that the partial judgment by which plaintiffs claims against Osaya, Osaya Inc., and America’s Favorite Chicken Company were dismissed be considered a final appealable judgment. Based on this stipulation, the judgment appealed is a final judgment, and properly before us on appeal.
Facts
On November 15, 1994, at approximately 9:00 P.M., Mr. Oberling went to Church’s Fried Chicken on Government Street to purchase some food. He parked his van and proceeded to the front door of the restaurant; however, the doors were locked, and he was instructed by employees inside to go over to the drive-through window for service. He proceeded, by foot, to the window where he placed and received his order. As he attempted to return to his vehicle, he was accosted by an assailant, (believed to be the *992 defendant, Cedric |3Jacobs) in an apparent armed robbery. The assailant shot and killed Mr. Oberling in the parking lot of the restaurant.
The original petition for wrongful death was filed by Mrs. Ruth Oberling, the surviving spouse. Mrs. Oberling subsequently died, and Charles Morris Campbell, individually and as the executor of the succession, was substituted as plaintiff.
With respect to named defendants, Osaya Inc., America’s Favorite Chicken Company, and Andrew Osaya (hereinafter referred to as the defendants) the petition alleges they are liable to the plaintiff based on a failure to provide adequate security for their patrons, for permitting the front door of the restaurant to be locked prior to closing time, thus causing the decedent to be exposed to the harm which ultimately killed him, and for failing to notify law enforcement authorities, which, according to the petition, “could have avoided the murder of decedent.”
The defendants answered the petition, denying liability and also filed a motion for summary judgment. Attached to said motion and in support thereof were portions of the depositions of Andrew Osaya, who was present at the restaurant at the time of the incident, Vickie Williams, Kelvin Hilliard and Roderick Fields, employees of Church’s who were also present at the restaurant at the time of the incident, and John Konopka, Jr., a sheriffs deputy on security duty at a pizza, restaurant across the street from Church’s, and his wife, Emily Konopka, who was visiting her husband across the street on the night of the incident, and who witnessed the murder.
The trial court found the defendants had no duty to protect against the criminal act which resulted in Mr. Oberling’s death and granted summary judgment and dismissed plaintiffs action against these defendants. This appeal followed.
Summary Judgment
A motion for summary judgment is properly granted when the pleadings, depositions, answers to interrogatories, and admissions on file, | ¿together with affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966B. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. The procedure is favored and shall be construed to accomplish these ends. La.C.C.P. art. 966A(2).
On appeal, summary judgments are reviewed de novo' under the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Royal Maccabees Life Insurance Company v. Montgomery, 97-1434, p. 7 (La.App. 1 Cir. 6/29/98); 716 So.2d 921, 924, writ denied, 98-2664 (La.12/11/98); 730 So.2d 940. Under the 1997 amendments to La.C.C.P. art. 966, the initial burden remains with the mover to show that no genuine issue of material fact exists. If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action or defense, then the nonmoving party must produce factual support sufficient to satisfy his evidentiary burden at trial. La.C.C.P. art. 966C(2). If the nonmoving party fails to do so, there is no genuine issue of material fact and summary judgment should be granted. La.C.C.P. art. 966; Royal Maccabees Life Ins. Co., 97-1434 at 6; 716 So.2d at 924.
Applicable Law
The duty-risk analysis is employed to resolve the issue of a business establishment’s liability to a patron for criminal assault by a third party. The first prong of the analysis is whether there was a duty on the part of the defendant to protect against the risk involved. Duty is a question of law. Generally, there is no duty to protect others from the criminal activities of third persons. Nevertheless, any business which invites the company of the public must take reasonable necessary acts to guard against the predictable risk of assaults. Green v. Infinity International, Inc., 95-2356, p. 3 (La.App. 1 Cir. 6/28/96); 676 So.2d 234, 236. However, this duty does not [ ¿extend to unforeseeable or unanticipated criminal acts by third persons. Mundy v. Department of Health and Human Resources, 620 So.2d 811, 813 (La.1993); Green, 676 So.2d at 236. Thus, a business *993 which has particular knowledge of the impending occurrence of a criminal act has a duty to protect. Moreover, a duty arises where circumstances indicate the establishment knew or should have known of the possibility of injury-causing criminal conduct due to a pattern of prior criminal activity which made the particular conduct foreseeable. Gardner v. Griffin, 97-379, p. 5 (La. App. 1 Cir. 4/8/98); 712 So.2d 583,587.
Analysis
Accordingly, foreseeability is an essential element in determining whether the defendants had a duty to protect Church’s patrons from the criminal acts of third parties. After a thorough review of the record, particularly the motion for summary judgment and the depositions submitted therewith, we agree with the trial court that there are no genuine issues of material fact remaining; the armed robbery which ultimately caused the death of Mr. Oberling was a random and unforeseeable criminal act against which the defendants had no duty to protect.
Andrew Osaya, the manager of the restaurant testified that in the five years that his corporation, Osaya, Inc. had been the owner, the Church’s restaurant had never been robbed nor had he ever had to call the police for anything. He testified that it was Church’s policy to close the doors of the restaurant at approximately 9:00 P.M. (one hour prior to closing time) to allow the employees time to clean up inside. For that last hour of business, customers would be served through the drive-through window. Mr. Osaya admitted that he did not employ security for his restaurant because there was no need for it; he testified that the restaurant is very well lit, with surrounding fluorescent lights as well as three to four flood lights which were on and operative on the night of the murder.
IfiVickie Williams, the assistant manager at Church’s on the night of the murder, testified that she had worked at the Church’s on Government Street for fifteen years, and that she had been robbed only once, at least seven to eight years prior to this incident. She also stated she was unaware of any criminal activity in the particular area where Church’s was located. She testified that it was company policy to lock the doors at 9:00 P.M. so the employees could begin to clean up inside. After this time, customers could be served at the drive-through window until closing time at 10:00 P.M. Ms. Williams testified that, on the date of the incident, she observed a man on the pay telephone outside the restaurant who seemed to havé been talking on the phone for what she considered to be a “long” time. (The person who had been on the phone may have been the suspected robber who fired the shot that killed Mr. Oberling.) However, contrary to assertions by the plaintiff, Ms. Williams did not find this activity suspicious. Specifically, she stated, “I didn’t believe he [person on the phone] was suspicious, just a person that was using the phone for a long time.”
The other two employees on duty the night of the murder, Kelvin Hilliard and Roderick Fields, both testified that they had observed a large vehicle in the parking lot, and a man from the vehicle had been using the pay phone. However, neither employee thought anything of it; it was not suspicious activity. Further, neither employee considered Church’s to be a dangerous place or located in a bad area.
John Konopka, a sheriffs deputy on security duty at Fleur-De-Lis restaurant, located across Government Street from Church’s, testified that he had worked at Fleur-De-Lis only two or three times prior to the night of the incident, but that he was unaware of any criminal activity at either restaurant, Fleur-De-Lis or Church’s. He stated that security was needed at Fleur-De-Lis because, unlike Church’s which was very well lit, the parking lot of Fleur-De-Lis was dark and did not have as many outdoor lights. While on duty at Fleur-De-Lis, he also observed the premises at Church’s and did 17not notice anything unusual or suspicious. The first he knew of anything happening was when he heard gunshots, at which point he drew his gun and ran to the front of the Fleur-De-Lis establishment.
Emily Konopka, Deputy Konopka’s wife, also testified by deposition. She was seated in a car with her husband in the Fleur-De-Lis parking lot on the night of the murder and observed certain activities in the Church’s parking lot across the street. Spe- *994 rifically, she noticed a man who appeared to be using the pay telephone for quite some time. According to Mrs. Konopka, she was very suspicious of the man’s activity, because she had not seen him deposit any money into the phone, but he appeared to be talking on it. However, Mrs. Konopka candidly admitted that she is a very suspicious person by nature, whose husband says she has an overactive imagination. She also admitted that she reads a lot of mystery books and is prone to believe that suspicious activities are taking place.
Based on the foregoing, we conclude there are no genuine issues regarding whether, under these circumstances, defendants owed a duty to protect Mr. Oberling from the criminal act which ultimately ended his life. There was no criminal history at the Church’s where the incident took place, nor were there any suspicious signs to alert the defendants of Osaya Inc.’s employees of the impending danger outside the restaurant. In fact, defendants have shown that the crime which occurred was a random and unforeseeable event which could not have been prevented. The evidence showed that Mr. Osaya notified law enforcement authorities immediately upon becoming aware that a crime was taking place; unfortunately, it was too late to protect the victim. Finding no duty on the part of defendants, summary judgment was proper, and that judgment is affirmed. Appeal costs are assessed to the plaintiff.
AFFIRMED.